NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TARYN M. VIVINO a/k/a MICHAEL F. VIVINO,<br><br>                   Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                  Defendant. | Civ. No. 15-6393<br><br>OPINION |

THOMPSON, U.S.D.J.

INTRODUCTION

      This matter has come before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Acting Commissioner of the Social Security Administration denying Plaintiff Taryn M. Vivino's ("Plaintiff") application for disability insurance benefits under Title II of the Social Security Act. Plaintiff seeks a reversal. (ECF No. 16). Defendant Acting Commissioner of Social Security ("Commissioner") seeks affirmance of the Commissioner's decision. (ECF No. 21). The Court has decided the appeal upon the submissions of both parties and without oral argument, pursuant to Local Civil Rule 9.1(f). For the reasons detailed below, the decision of the Commissioner is affirmed.

BACKGROUND

      Plaintiff was born Michael Francis Vivino. (R. 81). Plaintiff is now a fifty-six-year-old woman named Taryn M. Vivino. (*Id.*; R. 49). Prior to 2006, Plaintiff was male, married, and

1

worked full-time designing software and managing a small technical team. (R. 50-51). Plaintiff testified that her spouse was abusive, which required her to start working from home to help care for her three children. (*Id.*). In 2006, her spouse left, and Plaintiff had custody of the children. (*Id.*). Plaintiff sought contract jobs and website design she could perform from home, but found that she had more and more trouble following through on the jobs she found. (*Id.*). Plaintiff testified that by mid-2009, she could no longer complete any jobs due to the severity of her anxiety and depression. (*See id.*).

On December 3, 2009, Plaintiff sought treatment at Preferred Behavioral Health. (R. 241). Plaintiff reported an inability to focus, fatigue, periods of depression and self-harm, and an inability to keep up with household chores. (*Id.*). Plaintiff was diagnosed with "Major Depressive Disorder, Recurrent, Mild." (R. 246). Her Global Assessment of Functioning (GAF) score was 60,[1] with moderate occupational and economic problems. (*Id.*). On December 22, 2009, Plaintiff was prescribed an anti-depressant. (R. at 271-72). In January through March of 2010, Plaintiff's condition showed some improvement. (R. 273, 276).

After March 2010, Plaintiff did not return to the Preferred Behavioral Health until June 2011. In June 2011, Plaintiff's condition had deteriorated, and she was diagnosed with "Major Depressive Disorder, Recurrent, Moderate." (R. 282-83). Plaintiff also began discussing her longstanding desire to be female. (*Id.*). Plaintiff was put on a new medication. (R. 284). In July

---

[1] GAF scores are utilized by "mental health clinicians and doctors to rate the social, occupational, and psychological functioning of adults." *Irizarry v. Barnhart*, 233 Fed. App'x 189, 190 n.1 (3d Cir. 2007). The GAF scale ranges from 1 to 100. *See Debaise v. Astrue*, No. 09-0591, 2010 WL 597488, at *5 n.7 (W.D. Pa. Feb. 16, 2010). A GAF score of 41-50 indicates that an individual has serious symptoms (e.g., suicidal ideation, severe obsessional rituals) or a serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *See Watson v. Astrue*, No. 08-1858, 2009 WL 678717, at *5 (E.D. Pa. Mar. 13, 2009) (citation omitted). A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See Debaise*, 2010 WL 597488, at *5 n.7 (citation omitted).

through October 2011, Plaintiff showed improvement with a better mood and greater ability to complete tasks, and began to present as female in public. (R. 286, 289, 292). Plaintiff continued to go to Preferred Behavioral Health through early 2012. In March 2012, Plaintiff expressed disappointment after a job prospect fell through. (R. 252). Her mood was generally "up and down" and she continued to have difficulty completing tasks. (*Id.*).

On June 25, 2012, Plaintiff saw Dr. Zulfiqar Rajput for a consultative mental status examination. (R. 237). In talking to Dr. Rajput, Plaintiff described seeing a psychiatrist at Preferred Behavioral Health and feeling better for it. (*Id.*). However, she also described herself as being depressed since 2009 and having low energy. (*Id.*). Dr. Rajput determined that Plaintiff's thought processes were logical and goal-directed, with good judgment and long-term memory. (R. 238). Dr. Rajput also determined that Plaintiff was anxious and had a gender identity disorder in addition to her depressive disorder. (R. 238-39). Plaintiff's GAF score was 50 at this examination. (R. 239).

Plaintiff continued to seek treatment, with continued ups and downs. In August 2013, Plaintiff saw a nurse practitioner who assessed Plaintiff with a GAF score of 45-50, and saw marked limitations in her ability to remember and follow simple instructions. (R. 306, 309). In June 2014, a social worker assessed Plaintiff as having a GAF score of 65. (R. 333). The social worker saw no evidence of a limitation in remembering instructions, and only a mild limitation in following simple or detailed instructions. (R. 336).

Plaintiff applied for Social Security Disability benefits on January 4, 2012. (R. 23). Plaintiff alleged that her disability onset date was June 1, 2009, and that she was insured for benefits through March 30, 2012. (R. 170). Her claim was denied on July 10, 2012. (R. 104). She filed for reconsideration, but was again denied on March 28, 2013. (R. 112). Plaintiff then

3

sought a hearing before an administrative law judge (ALJ).  The hearing was conducted on July 2, 2014.  (R. 23).  The ALJ issued an unfavorable judgment on August 11, 2014.  (R. 20). Plaintiff sought review by Social Security's Appeals Council, but they denied her request for review.  (R. 1).  Plaintiff filed a complaint with this Court on August 25, 2015.  (ECF No. 1).

## LEGAL STANDARDS

### A.  Standard of Review

This Court reviews Social Security appeals under 42 U.S.C. § 405(g), which empowers this Court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  In reviewing the Administrative Law Judge's decision, this Court reviews questions of law de novo. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (2007).  This Court reviews questions of fact under a "substantial evidence" standard of review.  42 U.S.C. § 405(g).  "Substantial evidence is defined as 'more than a mere scintilla;' it means 'such relevant evidence as a reasonable mind might accept as adequate."  *Thomas v. Comm'r of Soc. Sec. Admin.*, 625 F.3d 798, 800 (3d Cir. 2010) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)); *see also Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).  Where the Commissioner's factual findings are supported by substantial evidence in the record, they are considered conclusive even though the Court might have decided the inquiry differently.  42 U.S.C. § 405(g); *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012).

### B.  Standard for Disability Benefits Determination

Disability is defined as the "inability to engage in any substantial gainful activity[2] by reason of any medically determinable physical or mental impairment which can be expected to

---

[2] "Substantial gainful activity" refers to jobs that exist in large numbers in the region where the claimant lives or in several regions of the country.  42 U.S.C. § 423(d)(2)(A).

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To show disability, a claimant must "furnish[] such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." *Id.* § 423(d)(5)(A).

The Commissioner employs a five-step sequential evaluation process for disability claims. *See generally* 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Plummer*, 186 F.3d at 428. The threshold inquiry looks to (1) whether the claimant has engaged in any "substantial gainful activity" since her alleged disability onset date. If not, the Commissioner considers (2) whether the claimant has any impairment or combination of impairments that is "severe" enough to limit the claimant's ability to work. *Id.* §§ 404.1520(b)-(c), 404.1521. If the claimant has a severe impairment, the Commissioner then examines the objective medical evidence to determine (3) whether the impairment matches or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* §§ 404.1520(d), 404.1525, 404.1526. If so, the claimant is then eligible for benefits; if not, the Commissioner determines (4) whether the claimant has satisfied her burden of establishing that she is unable to return to her past relevant work. *Id.* §§ 404.1520(f), 404.1560(b); *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007). If the claimant meets this burden, the burden shifts to the Commissioner to show (5) whether other work exists in significant numbers in the national economy that the claimant could perform given her medical impairments, age, education, past work experience, and Residual Functional Capacity ("RFC").[3] 20 C.F.R. § 404.1520(g); *Poulos*, 474 F.3d at 92.

---

[3] A "Residual Functional Capacity" is a claimant's remaining ability to perform work, given her impairments. 20 C.F.R. § 404.1520(e).

5

ANALYSIS

### A.  The Administrative Law Judge's Opinion

Following this five-step process, the ALJ found the following: (1) Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of June 1, 2009 through her last date insured (March 31, 2012), (R. 25); (2) Plaintiff had severe impairments limiting her ability to work in the relevant time period, namely, a major depressive disorder, an anxiety disorder, and a gender identity disorder, (*Id.*); (3) Through her last date insured, Plaintiff did not have any impairments or combination of impairments that meet the requirements of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1 (which would have resulted in automatic eligibility for benefits), (R. 29); (4) Plaintiff did satisfy her burden of showing that she is unable to return to her past work, (R. 33-34); and (5) through Plaintiff's last date insured, there were jobs in significant numbers in the national economy that Plaintiff could perform, given her age, education, past work experience, and RFC, (R. 34).  The ALJ additionally found that Plaintiff had an RFC that limited her to unskilled work, and that Plaintiff's own account of her limitations was not entirely credible.  (R. 30, 32).  The ALJ's findings resulted in a denial of disability benefits.  (R. 35).

### B.  Plaintiff's Challenges to the Administrative Law Judge's Opinion

Plaintiff makes three arguments: (1) the Appeals Council should have considered new and relevant evidence ; (2) the ALJ's finding about Plaintiff's RFC was not supported by substantial evidence; and (3) the ALJ's finding about Plaintiff's credibility was not supported by substantial evidence.  (Pl.'s Br., ECF No. 16, at 10).  The Court will address each argument in turn.

### *1. New Evidence Submitted to the Appeals Council*

Plaintiff argues that the Social Security Appeals Council should have considered a report prepared by Plaintiff's therapist on January 26, 2015 before denying her request for review. (*Id.* at 15, R. 11). The Appeals Council declined to consider the report because the report was "about a later time" after the relevant time period, and therefore the new information in the report "[did] not affect the decision about whether you were disabled at the time you were last insured for disability benefits." (R. 2).

This Court cannot consider evidence that was not presented to the Administrative Law Judge when reviewing the ALJ's decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001). The report was not presented to the ALJ because it was prepared approximately six months after Plaintiff's hearing. Therefore, the Court cannot consider the report. However, this Court may remand the case for the Commissioner to consider the January 2015 report if the Court finds that the report is material to Plaintiff's claim for benefits. *Id.*

The Court finds that the January 2015 report is not material to Plaintiff's claim. Plaintiff does not dispute that her last date insured was March 30, 2012. (Pl.'s Br., ECF No. 16, at 3). Therefore, only evidence that relates to Plaintiff's condition prior to March 30, 2012 is relevant to Plaintiff's claim. Plaintiff argues that the January 2015 report does relate to the relevant time period because it concerns Plaintiff's entire history going back to 2004. (*Id.* at 16). However, the report merely recites Plaintiff's history, as reported by Plaintiff to the therapist. (R. 10-11). The therapist only began seeing Plaintiff in August 2014. (R. 10). The report does not provide an opinion about what Plaintiff's condition was more than two years before the therapist first met Plaintiff. (*See* R. 11-12). Rather, the report speaks in terms of Plaintiff's current condition, and her prognosis for the next year. (R. 11). Therefore, the report does not relate to the relevant time

period, and is consequently not material to Plaintiff's claim. The Appeals Council was not in error when they refused to consider the January 2015 report.

    *2. Plaintiff's Residual Functional Capacity*

Plaintiff argues that the ALJ's findings about Plaintiff's RFC were not supported by substantial evidence because they gave undue attention to Plaintiff's GAF scores to the exclusion of other evidence, contrary to Social Security's policies. (Pl.'s Br., ECF No. 16, at 16). Plaintiff asserts that the Administrative Law Judge gave little weight to all the opinion evidence in the record, except for one invalid GAF score. (*Id.* at 23).

Plaintiff's description of the ALJ's opinion is inaccurate. The ALJ explained why he was discounting certain opinions and one GAF score. (R. 33). They were either contrary to the other evidence in the record, or written at significantly later times such that the opinions did not appear to relate to the relevant time period. (*Id.*). There is a wealth of evidence from the relevant time period that the ALJ detailed and relied upon. (R. 25-27, 32). While the opinion does mention GAF scores, it does not dwell upon them, but rather the entire opinion concerns itself with the ups and downs of Plaintiff's mental health during the relevant time period, as described by Plaintiff and the professionals treating her at the time. (*See id.*). Plaintiff focuses on a single short section of the opinion to assert that the ALJ neglected to consider "Plaintiff's decreased concentration and memory, or her dissociative states or other anxiety reactions." (Pl.'s Br., ECF No. 16, at 22). But the ALJ explicitly considered these factors in the Step 2 section of the opinion, where he summarized the different medical opinions in detail. (R. 25-27). Additionally, in the RFC section of the opinion, the ALJ gave little weight to the State Agency psychologists' opinions because they failed to take into account Plaintiff's anxiety. (R. 33).

The ALJ is not required to repeat all the relevant facts in the record at each of the five

steps of his analysis. *Tamimi v. Astrue*, No. 12-302E, 2013 WL 5201939, at *10 (W.D. Pa. Sept. 16, 2013) ("The ALJ need not repeat the evidence of Record to confirm he has read and accounted for it every time he notes evidence of record that supports a finding that Plaintiff is not disabled."); *Berner v. Astrue*, No. 08-3617, 2009 WL 2356905, at *16 (D.N.J. July 29, 2009) ("Though the ALJ made these [findings] at Step Two of his analysis, the Court will not require the ALJ to reconsider his RFC determination because he failed to repeat the same analysis at Step Four."). The Court finds that the ALJ relied on much more than a "mere scintilla" of evidence to support his RFC finding, and therefore his opinion was supported by substantial evidence. *See Thomas*, 625 F.3d at 800.

### 3. Plaintiff's Credibility

Plaintiff's third argument is that the ALJ did not adhere to the Social Security regulations that set the standard for evaluating a plaintiff's credibility. (Pl.'s Br., ECF No. 16, at 24). Therefore, the ALJ's findings as to Plaintiff's credibility were not based on substantial evidence. (*Id.*).

ALJs cannot "accept or reject that individual's complaints solely on the basis of such personal observations. Rather . . . the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence . . . ." Social Security Ruling 95-5P, 1995 WL 670415, at *2. The Third Circuit has emphasized that an ALJ "must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999). "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." *Id.* (quoting Social Security Ruling 96-7P, 1996 WL 374186, at *4).

The ALJ followed the relevant Social Security regulations and the Third Circuit's instructions when judging Plaintiff's credibility. As an initial matter, the Court notes that the ALJ did not find the bulk of Plaintiff's testimony uncredible. The ALJ found that the symptoms Plaintiff described could reasonably be expected to flow from her medically determinable impairments. (R. 32). The ALJ only found that Plaintiff's statements about the "intensity, persistence, and limiting effects" of her symptoms were "not entirely credible." (*Id.*). To support this finding, the ALJ cited over a dozen facts from the record, including: in March 2010, Plaintiff was exercising and making progress on a website she was designing and did not seek treatment for the following year; Plaintiff frequently reported an improved mood and that her medication was helping her; Plaintiff had a consistent GAF score of 60 prior to the last date insured; and Plaintiff expressed concerns over presenting as female at job interviews and had one job opportunity fall through, suggesting that Plaintiff believed she was capable of working. (R. 32-33). After citing the multiple reports he was relying upon, the ALJ then explained which evidence he gave little weight to, and why. He discounted medical opinions that were given significantly later than the last date insured that did not appear to relate to the relevant time period, a GAF score that was based on a one-time interview and conflicted with her prior consistent GAF score of 60, and a State Agency psychologists' report that failed to take into account Plaintiff's anxiety. (R. 33). Contrary to Plaintiff's assertions, this Court does not find that the ALJ's reasons for discounting certain evidence were "specious" nor that the evidence he relied upon was "cherry picked." (Pl.'s Br., ECF No. 16, at 26). The Court finds that the ALJ followed the correct procedures for judging Plaintiff's credibility, and that his findings were based on substantial evidence.

## CONCLUSION

For the reasons discussed above, the Commissioner's decision will be affirmed. An appropriate order will follow.

>   */s/ Anne E. Thompson*
>    ANNE E. THOMPSON, U.S.D.J.

Date: 9/2/16